**Opinion issued February 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-13-00958-CR**

————————————

**EX PARTE CRESENCIO ZANTOS-CUEBAS, Appellant**

---

**On Appeal from the County Court**
**Grimes County, Texas**
**Trial Court Case No. 24,581**

---

**DISSENTING OPINION**

I respectfully dissent. I disagree with the majority's understanding and application of the appropriate standard of review in this appeal from the denial of an application for a writ of habeas corpus. Finding no grounds for issuance of a writ of habeas corpus in this case, no grounds for vacating the underlying order of

the trial court deferring adjudication and placing appellant, Cresencio Zantos-Cuebas, on community supervision, as sought by appellant, and no legal authority that supports the ruling of the majority reversing the trial court's order and remanding the case for "entry of a written order including findings of fact and conclusions of law," I would affirm the trial court's order denying habeas corpus relief.

### Background

Appellant appeared without counsel before the County Court of Grimes County and pleaded guilty to the misdemeanor offense of terroristic threat towards a person with whom he had a dating relationship. The clerk's record reflects that the court admonished appellant about his constitutional rights in accordance with Code of Criminal Procedure article 26.13. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a), (d) (Vernon Supp. 2013) (stating required information about which trial court must admonish defendant, including fact that guilty plea may have immigration consequences, and providing that admonishments may be made orally or in writing). The admonishments, printed in English and entitled "Written Admonishments with Defendant's Written Waiver of Rights and Stipulation of Evidence," recited that, after the case was called to trial, appellant appeared in person and waived his right to counsel and "[t]he Court proceeded to admonish the Defendant pursuant to Art. 26.13 T.C.C.P. . . ."

2

The admonishments then recited the consequences of a guilty plea, including the punishment range for a Class A misdemeanor. Critically, the admonishments included a paragraph that stated:

> **CITIZENSHIP:** If you are not a citizen of the United States of America, a plea of guilty or nolo contendere to this offense may result in your deportation, exclusion from entry into this country, or the denial of naturalization under federal law.

The admonishments also listed appellant's constitutional rights, including the right to counsel, the right to appointment of counsel at no cost to him if he could not afford counsel, the right to a jury trial, the right to confront witnesses, the right not to incriminate himself, and the right to have time to prepare for trial. The admonishments were dated and signed by the trial court.

The following document, titled "Stipulations of Evidence, Waiver of Rights and Judicial Confession," was signed by appellant. It stated,

> Having all the foregoing fully explained by the Court and after having the Court admonish the Defendant of the consequences of the waiver and plea, the Defendant hereby waives the above rights and hereby enters a plea of **GUILTY/~~NOLO CONTENDERE~~** and further makes the following judicial admissions . . . .

The document identified appellant as the defendant and the charge against him as "Terroristic Threat-F[amily] V[iolence]." It then stated,

> It is my desire to enter a plea of **GUILTY/~~NOLO CONTENDERE~~** in the foregoing named and numbered cause. In doing so I wish to waive the following: 1. My right to a trial by jury; 2. The appearance, cross examination, and confrontation of witnesses . . . .

The "Stipulations of Evidence, Waiver of Rights and Judicial Confession" recited appellant's acknowledgement that he understood his right to counsel and was waiving it. It also recited his consent to the use of documentary evidence, including the stipulations, as testimony in support of the judgment of the court. The document stated, "I have read the foregoing and had the same explained to me by the Judge of this Court" and "I enter my plea uninfluenced by any consideration of fear . . . ." The "Stipulations of Evidence, Waiver of Rights and Judicial Confession" was signed and sworn to by appellant, signed by the prosecutor, and signed by the trial court.

The trial court accordingly entered an "Order Deferring Adjudication of Guilt and Placing Defendant on Community Supervision." This order included the following recital: "The defendant was admonished by the Court of the consequences of said plea yet the defendant persisted in pleading as aforesaid." The order was signed by both appellant and the trial court. The trial court placed appellant on deferred adjudication community supervision and imposed a $400 fine.

Appellant is not a United States citizen. After entry of the trial court's order imposing community supervision, United States Immigration and Customs Enforcement officials detained him and initiated removal proceedings.

4

He subsequently filed an application for habeas corpus relief in the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 2(a) (Vernon Supp. 2013) (permitting application for writ of habeas corpus challenging legal validity of order in which trial court imposes community supervision). He contended that his guilty plea was involuntary because he does not understand English, and, therefore, his constitutional rights were not adequately explained to him, and he did not knowingly and intelligently waive those rights when he pleaded guilty. He sought to withdraw his guilty plea and prayed that the trial court vacate its order placing him on community supervision.

Specifically, in his application for habeas corpus relief, appellant alleged for the first time in the proceedings that he does not "speak or write the English language." He provided his sworn declaration stating that, at the time he pleaded guilty, he was accompanied by a seventeen-year-old friend, Lesli Sanchez, who acted as his interpreter. However, he alleged that nobody translated the admonishments about his constitutional rights that he signed and that Sanchez did not translate anything concerning the immigration consequences of his guilty plea. He also provided Sanchez's affidavit, which supported his allegations.

On a filed copy of Sanchez's affidavit, the trial court wrote, "I do not deal with anything about citizenship, deportation or anything involving immigration." The court signed this statement and entered a separate order denying habeas corpus

5

relief upon finding appellant to be "manifestly entitled to no such relief" and his petition for habeas corpus to be frivolous. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 7(a).

The trial court's written order denying appellant's application for writ of habeas corpus stated,

> On this date, the Court considered Defendant's application for Writ of Habeas Corpus.
>
> The Court finds that the Applicant is manifestly entitled to no such relief and that such Application is frivolous and should be denied.
>
> **IT IS THEREFORE ORDERED** that Defendant's Application for Writ of Habeas Corpus is DENIED.
>
> **IT IS ORDERED THAT** all relief requested in this case not expressly granted is denied.

The majority now reverses this order and remands the case "for the entry of a written order including findings of fact and conclusions of law." I would affirm the trial court's order.

**Analysis**

*A. Standard of Review of Habeas Corpus*

A trial court's ruling on an application for habeas corpus is reviewed for a clear abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The appellate

6

court "must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion." *Kniatt*, 206 S.W.3d at 664. In reviewing the trial court's order denying habeas corpus relief, the appellate court affords "almost total deference to the judge's determination of the historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor." *Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.); *see also Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd) ("This deferential review applies even when the findings are based on affidavits rather than live testimony."); *Phuong Anh Thi Le v. State*, 300 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that, in reviewing trial court's ruling on habeas corpus petition, reviewing court must defer to all of trial court's implied factual findings supported by record). The appellate court "will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

One who seeks habeas corpus relief based on an involuntary guilty plea has the burden of showing that his plea was involuntary by a preponderance of the evidence. *Kniatt*, 206 S.W.3d at 664. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient

7

awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). "[T]he record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4, 90 S. Ct. at 1468 n.4. A person attacking the validity of his prior guilty plea as that plea is reflected in the written judgment "bears the burden of defeating the normal presumption that recitals in the written judgment are correct. Those written recitals are 'binding in the absence of direct proof of their falsity.'" *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) (quoting *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984)). A defendant's sworn representation in a plea proceeding that his waiver of counsel and guilty plea are knowing, intelligent, and voluntary "constitute[s] a formidable barrier in any subsequent collateral proceedings," such as an application for habeas corpus. *Kniatt*, 206 S.W.3d at 664 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 1629 (1977)).

### B. Application of Standard of Review

Here, appellant signed admonishments at the plea proceeding which stated that the rights he was waiving had been "fully explained by the Court." These included his acknowledgement that he knew that one of the consequences of his waiver and guilty plea was that his plea could result in his removal from the country if he was not a citizen. Appellant knew he was not a citizen. He gave no

8

indication to anyone that he did not understand what he was signing. To the contrary, he expressly acknowledged that he understood his rights to counsel and to a trial by jury, that he had read the stipulations and consented to their use as evidence against him, that they had been explained to him by the trial court, and that he had entered his plea without "any consideration of fear." Appellant swore to these stipulations and acknowledgements and was placed on community supervision pursuant to the trial court's order deferring adjudication. He then repudiated these acknowledgements in his habeas corpus petition.

There is no indication whatsoever in the record that at any point during the plea proceedings appellant complained that he did not know what he was signing, that he did not understand the admonishments he received or the consequences of his plea, or that he sought the appointment of counsel, a court-appointed interpreter, or more time to make a decision concerning his plea. Nothing in the record of appellant's plea proceedings reflects his purported inability to speak, read, and understand English; nothing reflects any objection made by appellant to the proceedings; and appellant's signature on the plea paperwork acknowledges that the court "fully explained," inter alia, that a guilty plea might result in his deportation, exclusion from entry into this country, or the denial of naturalization under federal law. To the contrary, the "Stipulations of Evidence, Waiver of Rights and Judicial Confession" expressly reflect appellant's understanding at the

9

time he entered his plea that he was entitled to counsel, that his plea was not coerced, and that he understood that, as a result of his guilty plea, he could face removal from the country. Thus, the record affirmatively reflects that appellant was fully accorded his rights and, with full understanding of what he was doing, voluntarily chose to plead guilty to the offense of terroristic threat rather than face trial before a jury.

The only evidence appellant provided to the trial court to support his claim that at the time of his guilty plea he did not speak or read English and did not know what he was signing consisted of the two after-the-fact affidavits attached to his habeas corpus application: his own self-serving sworn declaration and the affidavit of a friend, Sanchez, who accompanied him to trial to interpret for him. Appellant and Sanchez both aver that Sanchez did not translate or explain the admonishments and waivers appellant signed.

I would hold that appellant entirely failed to overcome the barrier of his sworn waivers and acknowledgements. The written recitals appellant signed "are binding in the absence of direct proof of their falsity." *Guerrero*, 400 S.W.3d at 583; *see also Kniatt*, 206 S.W.3d at 664 (stating that defendant's sworn representation that his waiver of counsel and guilty plea are knowing, intelligent, and voluntary constitutes "a formidable barrier in any subsequent collateral proceeding").

10

Here, the only evidence that these waivers and stipulations were false was appellant's own sworn declaration that he did not and does not understand English and Sanchez's affidavit, both of which were attached to his application for habeas corpus. Trial courts have discretion to discount factual assertions in an affidavit by an interested party that could not have been readily controverted. *See Charles v. State*, 146 S.W.3d 204, 210 (Tex. Crim. App. 2004), *superseded by rule on other grounds as stated in State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007). Moreover, trial courts generally are not required to believe factual statements contained within an affidavit, even when those statements are uncontradicted by other affidavits. *See Shanklin v. State*, 190 S.W.3d 154, 167 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) (holding so in motion-for-new-trial context); *see also State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (stating, in motion to suppress context, "[T]he judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted").

Appellant's and Sanchez's after-the-fact, out-of-court averrals about appellant's ability to understand the proceedings and waivers he signed were untimely factual statements in appellant's self-interest. Even though the State did not offer affidavits to controvert appellant's and Sanchez's affidavits, it was within the trial court's discretion to disbelieve the assertions contained in those affidavits that appellant does not read or speak English. *See Charles*, 146 S.W.3d at 210;

11

*Shanklin*, 190 S.W.3d at 167; *see also Phuong Anh Thi Le*, 300 S.W.3d at 327 (holding that appellate court must defer to all implied factual findings supported by record). The trial court, and not this Court, is in the best position to have determined whether appellant understood what he was signing at the time he entered his plea. *See Ex parte Wilson*, 171 S.W.3d at 928 (requiring almost total deference to trial court's determination of historical facts); *see also Ex parte Mello*, 355 S.W.3d at 832 (applying deferential review to findings based on affidavits).

I agree with the trial court that appellant has failed to carry his burden of showing by a preponderance of the evidence that his guilty plea was involuntary because he did not understand the admonishments he signed, he did not understand that his judicial confession could subject him to removal proceedings, and he was coerced into waiving his constitutional rights and pleading guilty to the offense with which he was charged. *See Guerrero*, 400 S.W.3d at 583; *Kniatt*, 206 S.W.3d at 664. The record reflects that appellant acknowledged by his signature that he was warned of the potential for adverse immigration consequences of his plea both in writing and by the trial court, and he acknowledged that he had an interpreter of his choice present to translate anything in the admonishments and waivers that he did not understand. He did not seek to postpone the proceedings because of his lack of understanding, and he did not request that the trial court appoint a certified

12

interpreter to translate the admonishments for him.[1] The record reflects that he did not indicate his dissatisfaction with Sanchez's alleged translation of his plea paperwork until the habeas corpus proceeding. In my view, appellant did not surmount the barrier posed by his sworn representation that his waiver of counsel and guilty plea were knowing, intelligent, and voluntary. *See Kniatt*, 206 S.W.3d at 664–65. I would, therefore, hold appellant to the statements in the waivers and stipulations made at the time of his guilty plea as binding. *See Guerrero*, 400 S.W.3d at 583.

I would also hold that the trial court correctly denied appellant's petition for habeas corpus relief on the ground that he was "manifestly entitled to no such relief" and found it frivolous. I would overrule appellant's sole issue.

### C. Majority's "De Novo" Standard of Review

The majority, however, applies a different understanding of the appropriate standard of review of habeas corpus orders and, accordingly, discounts the effect of the waivers and stipulations signed by appellant. The majority opines,

> "If the court determines from the face of an application [for habeas corpus] or documents attached to the application that the applicant is manifestly entitled to no relief, the court shall enter a written order denying the application as frivolous." Otherwise, a second procedure

---

[1] The majority opines that Sanchez is not a licensed court interpreter. Slip Op. at 5 (citing TEX. GOV'T CODE ANN. § 57.001 (Vernon 2013) (defining "licensed court interpreter")). Neither appellant nor the majority makes any legal argument that a licensed court interpreter is required to translate for a criminal defendant. Therefore, this issue is not properly before the Court. *See* TEX. R. APP. P. 38.1(i).

applies, and the trial court cannot rule on the application without entering findings of fact and conclusions of law . . . .

Slip Op. at 8 (quoting TEX. CODE CRIM. PROC. ANN. art. 11.072, §7(a)). In the majority's view, this case falls in the "other" category because, upon conducting its own *de novo* review of the application—rather than reviewing the trial court's order for an abuse of discretion, as required by Texas law—it disagrees with the trial court's finding that appellant was manifestly not entitled to habeas corpus relief and that his application was frivolous.

In applying its *de novo* standard of review and reaching its conclusion, the majority does not address whether the trial court abused its discretion in light of evidence in the record. *See Kniatt*, 206 S.W.3d at 664 (setting out discretionary standard of review of order denying habeas corpus). Nor does the majority give weight to the trial court's statutory right to rely on its own personal recollection of the prior proceedings in making its determination of whether habeas corpus relief should be granted. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b). Thus, the majority fails to consider the stipulations and waivers in the record, or any of the documents in the record other than appellant's and Sanchez's affidavits, which appellant attached to his application for writ of habeas corpus. *Cf. Kniatt*, 206 S.W.3d at 664 (holding that appellate court reviewing trial court's habeas corpus ruling must review record evidence in light most favorable to ruling and uphold ruling absent abuse of discretion); *Phuong Anh Thi Le*, 300 S.W.3d at 327

14

(requiring that reviewing court defer to all of trial court's implied factual findings supported by record); *Ex parte Wilson*, 171 S.W.3d at 928 (requiring almost total deference to judge's determination of historical facts supported by record). Consequently, the majority fails to consider the trial court's factual determinations made at the time appellant pleaded guilty.

The majority assumes that determining that appellant was "manifestly entitled to no relief" did not involve evaluating the credibility of witnesses, the record of the plea proceedings, or the trial court's personal recollection of the case. *See* Slip Op. at 8. But, in analyzing appellant's habeas corpus application and the supporting documents, including appellant's and Sanchez's affidavits, in reviewing the record, and in determining that appellant's application was frivolous, the trial court necessarily had to make implied credibility determinations. Reviewing courts afford great deference to trial court findings based on credibility and demeanor. *Ex parte Roberts*, 409 S.W.3d 759, 762 (Tex. App.—San Antonio 2013, no pet.); *see also Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) ("[R]eviewing courts should also grant deference to 'implicit factual findings' that support the trial court's ultimate ruling . . . ."), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). The majority affords no deference to these necessarily implied findings. Rather, it requires the trial court's findings to be made in writing on remand.

15

I disagree with the majority's opinion that neither this Court nor the trial court was required "to determine the truth or falsity of factual allegations made [in the application for a writ of habeas corpus] but only to apply the law to the facts as depicted in the application and accompanying documents." Slip Op. at 8–9. Nor do I agree with its opinion that both the trial court and this Court are required to assume the veracity of the facts as stated in the application and to determine whether they plausibly give rise to an entitlement to relief. Slip Op. at 8–9. Nor do I agree with the majority's ruling that the trial court erred in concluding that appellant was manifestly entitled to no habeas corpus relief and that his application was frivolous. Slip Op. at 14.

In sum, I cannot agree with the majority's understanding of the standard of review of an application for writ of habeas corpus, its reasoning in this case, or its holding reversing the trial court's order and remanding the case for "entry of a written order including findings of fact and conclusions of law."

## Conclusion

I would review the trial court's order denying appellant's application for a writ of habeas corpus under the standard of review set out in this dissenting opinion, and I would affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.2(b).

17